**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CATHERINE BURK,** | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:25-CV-1536** |
| | § | |
| **VISA, INC.,** | § | |
| ***Defendant.*** | § | |

**PLAINTIFF'S AFFIRMATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Catherine Burk ("Burk" or "Plaintiff") moves this Court under Federal Rule of Civil Procedure 56 for partial summary judgment on twenty-five affirmative and other defenses Defendant Visa, Inc. ("Visa" or "Defendant") pled in its Answer (Dkt. 4; Ex. 9, Defendant's Answer to Plaintiff's Original Complaint ("Answer")), on liability on her Family and Medical Leave Act interference claim, and on elements of her claims Visa has admitted or the record establishes without contradiction.

## I. INTRODUCTION

Visa terminated Catherine Burk sixty-one days after she told her supervisor she had cancer. She brings claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

This motion seeks summary judgment on: (1) improper affirmative defenses and those Visa cannot support with evidence, (2) liability on Plaintiff's FMLA interference claim, and (3) elements of Plaintiff's claims that Visa has admitted or that the record establishes without dispute.

Burk appends the following exhibits in support of her motion:

| | |
|---|---|
| Exhibit 1 | Oral Deposition of Ryan Stockwell, Defendant's Corporate Representative, taken August 21, 2026. |
| Exhibit 2 | Oral Deposition of Hilary Aslaksen, taken August 19, 2026. |
| Exhibit 3 | Oral Deposition of Alicia Bell, taken August 26, 2026. |
| Exhibit 4 | Defendant's Responses to Plaintiff's First Set of Interrogatories, verified March 16, 2026. |
| Exhibit 5 | Oral Deposition of Catherine Burk, taken June 25, 2026. |
| Exhibit 6 | Charge of Discrimination and Amended Charge. |
| Exhibit 7 | Notice of Right to Sue, issued June 25, 2025. |
| Exhibit 8 | Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories. |
| Exhibit 9 | Defendant's Answer to Plaintiff's Original Complaint (Dkt. 4). |
| Exhibit 10 | Plaintiff's Original Complaint (Dkt. 1). |
| Exhibit 11 | Plaintiff's Job Search Spreadsheet. |
| Exhibit 12 | Visa Severance Agreement and Release, with Older Worker Benefit Protection Act attachment (Burk 000006-000023). |
| Exhibit 13 | Declaration of Catherine Burk. |
| Exhibit 14 | Catherine Burk 2022 and 2023 Performance Review (Visa 000005-000015). |
| Exhibit 15 | Email from Catherine Burk to Gen Harrison-Doss, February 21, 2024 (Visa 000023). |
| Exhibit 16 | Email from Catherine Burk to Ryan Stockwell, February 22, 2024 (Visa 000024). |
| Exhibit 17 | Email exchange between Catherine Burk and Ryan Stockwell, March 19, 2024 (Visa 000027). |
| Exhibit 18 | Plaintiff's Notice of Deposition of Defendant's Corporate Representative. |

## II. STATEMENT OF FACTS

Visa hired Burk in November 2021 as Senior Director of Talent Acquisition. Ex. 9 ¶ 6; Ex. 10, Dkt. 1 Plaintiff's Original Complaint, ¶ 6; Ex. 1, Deposition of Ryan Stockwell, Visa's Corporate Representative, at 35:5-7, 39:16-19. Burk was born on December 3, 1960. Ex. 9 ¶ 9; Ex. 10, ¶ 9. Soon after hiring Burk, Visa reorganized her to report directly to Ryan Stockwell, Vice President and Head of Global Tech Talent Acquisition. Ex. 9 ¶ 11; Ex. 10, ¶ 11. Stockwell reported to Hilary Aslaksen, Vice President of Global Talent Acquisition. Ex. 2, Deposition of Hilary Aslaksen at 10:1-6, 12:11-14. Alicia Bell, a Senior Manager on Visa's People Team, served as a People Business Partner to Stockwell's organization. Ex. 3, Deposition of Alicia Bell at 13:8-10, 14:21-24, 15:5-8, 15:23-16:1.

In June 2023 Visa carried out the first phase of a two-phase restructuring of its Global Tech Talent Acquisition organization. Ex. 1 at 97:3-6, 99:17-23. The second phase is at issue here. *Id.* at 97:3-4.

During phase one, Burk's role was "helping to identify individuals on her team that [Visa] would consider eliminating the roles for." *Id.* at 100:21-25. Visa also moved another team under her, giving her additional direct reports. *Id.* at 101:9-17. Visa knew a second phase would follow but had not selected its dates or its scope. *Id.* at 99:20-23.

For fiscal year 2023, Stockwell rated Burk "outstanding" on the "What," Visa's highest rating, which it curves to roughly the top twenty percent of employees, and "strong" on the "How," a satisfactory rating. Ex. 14, 2022-2023 Performance Review (Visa 000005-000015); Ex. 1 at 63:14-20; Ex. 2 at 67:9-17, 68:2-13. Visa never placed Burk on a performance improvement plan or gave her a written reprimand. Ex. 1 at 43:25-44:9.

On February 21, 2024, Burk emailed Gen Harrison-Doss, Visa's Director of Military Talent and Diversity Programs, that she had learned that day she had skin cancer in three areas. Ex. 4, Defendant's Responses to Plaintiff's First Set of Interrogatories, Response No. 7; Ex. 15, Feb. 21, 2024 Email to Harrison-Doss (Visa 000023); Ex. 1 at 20:14-20, 80:22–81:4; Ex. 2 at 58:10-13. The next day she emailed Stockwell, "Ugh, just got off the phone, so 3 surgery areas, face, back, and the one by my arm is pre-melanoma." Ex. 16, Feb. 22, 2024 Email to Stockwell (Visa 000024); Ex. 1 at 81:11-21. Visa's verified answer states Stockwell learned on or around February 22, 2024, of Burk's requests for time off to treat her skin condition. Ex. 4, Response No. 7.[1] On February 23, 2024, Bell wrote to Stockwell, "For Catherine, I know we will down-level to

[1] Visa's response to Burk's Interrogatory No. 7 is captioned "Response No. 6." Visa's response to Interrogatory No. 8 has no caption; this motion cites it as Response No. 8. Visa's Response No. 8 states that "Ms. Burk was denied any time off." Stockwell, who verified the responses, testified that the sentence omits the word "not." Ex. 1 at 172:12-17, 178:13-17.

Director . . . ." Ex. 1 at 110:19-111:5, 120:2-8. On March 5, Bell wrote to Stockwell summarizing two options they had discussed: create a new Senior Director role and allow Burk and Harrison-Doss to interview for it, or eliminate one Senior Director role and exit Burk. *Id.* at 120:16-121:16, 122:20-123:5. On March 6, Bell, with Stockwell, told Aslaksen they had chosen to eliminate Burk's role. *Id.* at 123:6-124:1, 124:18-125:2. On March 19, 2024, Burk wrote to Stockwell that she had two surgery dates scheduled and would likely have two more. Ex. 17, Mar. 19, 2024 Email Exchange (Visa 000027); Ex. 1 at 83:17-25. He answered, "Thanks for the update, Catherine, sorry again that you're going through this. Please take all the time you need to take care of yourself. We've got you covered." Ex. 17; Ex. 1 at 84:2-7; Ex. 4, Response No. 8.

In April 2024, Stockwell conducted a midyear preview with Burk shortly before her discharge. Ex. 1 at 48:15-19. Burk asked whether her job was secure, and he told her he believed it was. Asked at his deposition whether that was true, Stockwell answered, "No." *Id.* at 49:16-23.

Visa then terminated Burk on April 23, 2024. Ex. 9 ¶¶ 23, 38; Ex. 1 at 127:5-7. Stockwell testified Visa did not terminate Burk for poor performance and the layoff was "performance neutral." Ex. 1 at 44:10-11, 63:5-10. Visa admits this in its Answer. Ex. 9 ¶ 26. But Burk was the ***only*** employee ***at*** Director level ***or above*** whom Visa selected for layoff in Stockwell's reorganization. Ex. 1 at 152:14-19. Stockwell testified Visa selected each of the six other laid-off employees he was questioned about *because* they produced at a lower level than their peers. *Id.* at 146:13-149:10. Stockwell did not believe the other five would have been selected had they produced more. *Id.* at 151:1-152:7. However, Burk's layoff was "performance neutral." *Id.* at 63:5-7. Visa just happened to select her for the reduction-in-force and move Gen Harrison-Doss, who was 41, from Director to Senior Director, to the level Burk held. Ex. 4, Response No. 5; Ex. 1 at 71:14-19, 188:22-189:6. Visa's verified interrogatory answer states it consolidated Burk's duties

into a combined Senior Director role and gave that role to Harrison-Doss. Ex. 4, Response No. 5; Ex. 1 at 171:6-11.

Burk filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 13, 2024 and an amended charge on December 12, 2024. Ex. 6, Charge of Discrimination and Amended Charge; Ex. 5, Deposition of Catherine Burk at 85:17-86:9. The EEOC issued her Notice of Right to Sue on June 25, 2025. Ex. 7, Notice of Right to Sue. Burk filed this suit on September 22, 2025. Ex. 10.

Burk began looking for work within days of her termination. Ex. 5 at 86:18-23. She has applied for positions continuously since then, has consulted *eleven* recruiting and outplacement firms, and has worked as a substitute teacher for the Lago Vista and Leander school districts and as an administrative employee at Holan Law. Ex. 8, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories, Answers to Nos. 2, 3, and 4; Ex. 5 at 88:1-9, 89:18-24.

**III. <u>STANDARD FOR SUMMARY JUDGMENT</u>**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must use affidavits, depositions, answers to interrogatories, and admissions to designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted); *see also* FED. R. CIV. P. 56(c)(1).

Where the nonmoving party carries the burden of proof on an issue, the movant satisfies Rule 56 by pointing to the absence of evidence supporting that issue, and the nonmovant must then come forward with evidence sufficient to establish each essential element. *Celotex*, 477 U.S. at 322-25; *Brenyah v. Columbia Hosp. Corp. of Bay Area*, 181 F.4th 609, 619 (5th Cir. 2026). Visa

bears the burden of proof on each true affirmative defense, so Burk may obtain summary judgment on those defenses. *See Celotex*, 477 U.S. at 323-24; *Martinez v. Bexar Cnty.*, 819 F. Supp. 3d 624, 632 (W.D. Tex. 2026) (explaining movant may show record cannot support essential element of the nonmovant's "claim or defense"); *Teague v. Omni Hotels Mgmt. Corp.*, No. A-19-CV-00940-ADA, Dkt. No. 57, at 12-15 (W.D. Tex. Nov. 24, 2020) (granting plaintiff summary judgment on the employer's failure-to-mitigate, waiver, and estoppel defenses).

## IV. ARGUMENT

### A. Summary Judgment is Appropriate on Each of Visa's Twenty-Five Affirmative Defenses.

The chart below lists each defense as Visa numbered it in the "Defendant's Affirmative and Other Defenses" section of its Answer (Ex. 9), and the reason each fails as a matter of law.

| **Defense Alleged** | **Reason for Dismissal** |
|---|---|
| No. 1: Failure to state facts sufficient to constitute a cause of action; failure to state a claim upon which relief can be granted. | Failure to state a claim tests Burk's pleading and is not a matter outside her prima facie case, and is not an affirmative defense under FED. R. CIV. P. 8(c)(1). Visa filed no motion under Rule 12(b)(6). |
| No. 2: Plaintiff was an at-will employee subject to termination at any time, for any legal reason. | At-will status permits discharge for any *lawful* reason. It does not excuse a discharge the ADEA, the ADA, or the FMLA makes unlawful. |
| No. 3: Plaintiff cannot meet her burden of proof. | A denial of proof is not an affirmative defense; it raises no matter Visa must prove. |
| No. 4: Defendant denies Plaintiff sustained any damages as a result of Defendant's conduct. | Denials of causation and damages are not affirmative defenses. |
| No. 5: Plaintiff is not entitled to costs, interest, attorney's fees, injunctive relief, reinstatement, or any other form of relief. | Each statute Burk sues under authorizes these remedies. *See* 29 U.S.C. §§ 216(b), 626(b) (ADEA); 42 U.S.C. §§ 12117(a), 12205 (ADA); 29 U.S.C. § 2617(a) (FMLA). Denying a remedy is not an affirmative defense. |
| No. 6: Defendant did not violate the laws cited in the Complaint; alternatively, Defendant made good faith efforts to comply with such laws. | The first clause is a denial of liability. On the second, good faith is not a defense to liability under the ADEA, the ADA, or the FMLA, and Visa has no evidence of FMLA good faith. *See* Section IV.A.2 below. |

| | |
|---|---|
| No. 7: Failure to exhaust administrative remedies; claims beyond the scope of the administrative charge are barred. | Burk filed her Charge of Discrimination 143 days after Visa discharged her. Ex. 6. That is within 180 days, and Texas is a deferral state, where the period is 300 days. 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); 29 U.S.C. §§ 626(d)(1), 633(b). She filed suit 89 days after the EEOC issued her Notice of Right to Sue. Ex. 7; Ex. 10. Her ADEA and ADA claims arise from the charge she presented to the EEOC, and Visa has identified no claim outside its scope. *See Brenyah*, 181 F.4th at 619 (exhaustion requires a timely charge and a notice of right to sue). The FMLA requires no administrative exhaustion. 29 U.S.C. § 2617(a)(2); 29 C.F.R. § 825.400(a). |
| No. 8: Visa took all employment actions for legitimate business reasons, good cause, and nondiscriminatory reasons; alternatively, Visa would have taken the same actions even absent any impermissible factor. | This defense asserts two things and neither is an affirmative defense. First, Visa says it acted for legitimate business reasons. Visa need not prove that. Once Burk makes her prima facie showing, Visa carries a burden of production to offer a legitimate, nondiscriminatory reason, and the burden of persuasion stays with Burk throughout. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013) (*McDonnell-Douglas* shifts burden of production to employer); *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 421 & n.5 (5th Cir. 2024) (burden of persuasion remains with plaintiff). Naming a step in the *McDonnell Douglas* sequence is not a defense: if the record creates a fact question, then the jury decides it. Second, Visa says it would have discharged Burk anyway. The Supreme Court rejected that defense under the ADEA. A plaintiff must prove age was the but-for cause, and "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). The Court should grant summary judgment on the first assertion as to all three claims and on the second as to the ADEA and FMLA claims. Visa bears the burden on the second assertion as to the FMLA claim and has no competent evidence to carry it. *See* Section IV.B.4 below. |
| No. 9: Defendant may not be held vicariously liable for the employment decisions of its managerial employees where those decisions were contrary to Defendant's good faith efforts to comply with the law. | Visa's verified interrogatory answer states Ryan Stockwell, a Vice President of Visa, was the primary decisionmaker. Ex. 4, Response No. 1. Visa offers no proof that Stockwell's actions as manager were contrary to Visa's efforts to comply with the law. *See* Section IV.A.2 below. Good faith efforts bear on punitive damages, not liability. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999) (discussing |

| | |
|---|---|
| | role of good faith for Title VII punitive damages but logic applies to statutes at issue). |
| No. 10: The complained-of acts were outside the line and scope of any employee's duties, and Defendant cannot be held liable via *respondeat superior* or any other theory. | Visa swore Stockwell decided to eliminate Burk's role in consultation with Aslaksen, Perez, and Bell, each acting in a Visa role. Ex. 4, Response No. 1. Visa calls the reorganization "a business decision based on the need to provide optimal delivery and efficiency." *Id.* A decision a Vice President made in consultation with his supervisor and two People Business Partners, and Visa defends in this action is a business decision and is not conduct outside the line and scope of anyone's duties. |
| No. 11: Defendant denies any malicious, willful, wanton, recklessly indifferent, intentional, or reckless conduct. | "Willful" and "reckless" track liquidated damages under the ADEA, which are available only for a willful violation, meaning Visa knew of or showed reckless disregard for whether the statute prohibited its conduct. 29 U.S.C. § 626(b); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993). "Malicious" and "recklessly indifferent" track punitive damages under the ADA, available where the employer acts with malice or reckless indifference to federally protected rights. 42 U.S.C. § 1981a(a)(2), (b)(1). "Intentional" tracks Burk's liability case itself. Each is Burk's to prove, so denying them states no defense. Visa has also identified no evidence its conduct was in good faith rather than malicious, willful, wanton, recklessly indifferent, intentional, or reckless. And under the FMLA the burden runs contrary: liquidated damages are presumptive unless Visa proves good faith and reasonable grounds. 29 U.S.C. § 2617(a)(1)(A)(iii). It has no evidence of either. *See* Section IV.A.2 below. |
| No. 12: Defendant did not treat Plaintiff differently than similarly situated individuals, intentionally or otherwise. | Denying Burk's proof is not an affirmative defense. |
| No. 13: All actions or inactions by Defendant were made in good faith and for legitimate and lawful reasons that were not pretextual. | Pretext is Burk's burden. Denying pretext states no defense. On good faith, *see* No. 6 above and Section IV.A.2 below. |
| No. 14: Failure to mitigate; damages are limited; Defendant is entitled to set off; amounts earned or earnable with reasonable diligence must reduce any recovery; damages were not | Visa must prove each element of failure to mitigate. It has identified no substantially equivalent position available to Burk that she failed to pursue. The discovery record shows Burk continuously seeking comparable and interim employment. *See* Section IV.A.1 below. The Court also calculates set-off of interim earnings at judgment; it is not a defense to be tried. |

| | |
|---|---|
| proximately related to any act or omission by Defendant. | |
| No. 15: The acts or omissions of Defendant, if any, were not the cause in fact of any harm or loss suffered by Plaintiff. | A denial of causation is not an affirmative defense. |
| No. 16: Plaintiff suffered no damages; her alleged damages were caused by preexisting conditions, intervening causes, her own contributory conduct, and the acts of other persons or entities. | Contributory and comparative fault are not defenses to claims under the ADEA, the ADA, or the FMLA. The rest denies damages. Visa has produced no evidence of an intervening cause, a preexisting condition, or third-party conduct that caused Burk's lost wages. |
| No. 17: Defendant is not liable for damages because it did not authorize or ratify any allegedly discriminatory acts and was not reckless in hiring the employees who committed them. | Stockwell was a Visa Vice President and, by Visa's answer, the primary decisionmaker. Ex. 4, Response No. 1. A defense built on non-ratification and reckless hiring does not reach a decision the employer's senior manager made within the scope of his employment. *See Kolstad*, 527 U.S. at 542-43 (discussing agency law with respect to managers). Good faith efforts bear on punitive damages only, and Visa offers no proof that Stockwell's decision was contrary to any such effort. *See id.* at 545-46; *see* Section IV.A.2 below. |
| No. 18: Plaintiff is not entitled to equitable relief, compensatory, punitive, actual, emotional distress, lost income, liquidated damages, fees, costs, or any monetary recovery: failed to allege facts supporting such relief; and the relief sought is unconstitutional and in violation of federal and state law; Visa acted in good faith and on reasonable grounds. | *See* No. 5 above. Visa identifies no constitutional infirmity in the ADEA, the ADA, or the FMLA, and each statute authorizes the relief Burk seeks. On good faith, *see* Section IV.A.2 below. |
| No. 19: Any claim for punitive damages is barred in whole or in part by the constitution and laws of the State of Texas and the United States. | Burk pleads no Texas cause of action. The Constitution does not bar punitive damages, though a grossly excessive award may violate due process. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). That question arises after a verdict and is not an affirmative defense. |
| No. 20: Plaintiff's damages are subject to applicable statutory caps or other limitations on damages. | The cap in 42 U.S.C. § 1981a(b)(3) applies by operation of law after verdict. *See* 42 U.S.C. § 1981a(c)(2). The ADEA provides liquidated damages rather than punitive damages. |

| | |
|---|---|
| | 29 U.S.C. § 626(b). This states a rule of law, not a matter for trial. |
| No. 21: Defendant made good faith efforts to comply with state and federal law, exercised reasonable care to prevent and address discriminatory, harassing, or retaliatory behavior, and Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities. | The *Faragher* and *Ellerth* defense is unavailable where plaintiff's claim rests on supervisor's tangible employment action. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998). Stockwell discharged Burk, and a discharge is a tangible employment action. Ex. 4, Response No. 1; Ex. 1 at 126:22-23, 127:8-11; Ex. 9 ¶¶ 23, 38. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Burk pleads no harassment or hostile work environment claim. Ex. 10, Counts One through Three. |
| No. 22: Defendant's policies prohibit discrimination and retaliation and afford a complaint procedure; Defendant exercised reasonable care and made good faith efforts to implement, maintain, and enforce those policies and to train employees on them. | *See* No. 21 above. Burk alleges a discriminatory termination, not harassment. |
| No. 23: Defendant is not liable for conduct of which it had no actual or constructive knowledge and against which it maintains an express policy effectively disseminated to all employees. | Visa admits Stockwell knew of Burk's diagnosis and medical procedures before he discharged her. Ex. 9 ¶¶ 14, 25, 47; Ex. 4, Response No. 7. A lack-of-knowledge defense cannot reach a decision the ***knowing*** decisionmaker made himself. |
| No. 24: To the extent any of Plaintiff's claims are determined to be untimely, such claims are time-barred and subject to dismissal. | *See No. 7 above.* No claim is untimely. Burk filed her charge within 300 days of the discharge, filed suit within ninety days of her Notice of Right to Sue, and filed her FMLA claim 517 days after the discharge, within the two-year period. Ex. 9 ¶¶ 23, 38; Ex. 10; 29 U.S.C. §§ 626(e), 2617(c)(1); 42 U.S.C. §§ 2000e-5(f)(1), 12117(a). |
| No. 25: Defendant denies all allegations not expressly admitted and invokes and reserves all applicable rights and defenses created by Rules 8 and 12 of the Federal Rules of Civil Procedure. | A general denial is not an affirmative defense. A reservation of unnamed defenses gives no fair notice of anything. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (affirmative defense must be pleaded with enough specificity to give fair notice). Discovery has closed and the deadline to amend pleadings has passed. To the extent Visa offers this as a defense, the Court should grant summary judgment on it. |

The Court should grant summary judgment on all twenty-five affirmative and other defenses, with No. 8 limited as stated above. Nos. 1, 3, 4, 12, and 15 deny elements of Burk's claims, and this Court has recognized defenses of this kind "are not affirmative defenses at all but simply negations of elements." *Cruz v. R2Sonic, LLC*, 405 F. Supp. 3d 676, 696 (W.D. Tex. 2019) (Pitman, J.). If the Court does not enter judgment on those five, Burk asks the Court order they not be submitted to the jury as affirmative defenses. *See Teague*, Dkt. No. 57, at 14-15 (granting summary judgment where a pleaded defense negated an element of the plaintiff's claim).

**1. Visa Cannot Carry Its Evidentiary Burden on the Failure to Mitigate Defense.**

Visa asserts Burk "[f]ailed and/or neglected to use reasonable care to minimize and mitigate her alleged injuries and damages, if any, and therefore, Plaintiff can have no monetary recovery." Ex. 9, Affirmative Defense No. 14. Visa must prove failure to mitigate. *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972) (*quoting Hegler v. Bd. of Educ.*, 447 F.2d 1078, 1081 (8th Cir. 1971)) (holding defendant "[h]as to show not only that the [plaintiff] failed to use reasonable care and diligence, but that there were jobs available which [plaintiff] could have discovered and for which she was qualified".); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998) ("the burden is on the employer to prove failure to mitigate").

*Sparks* requires Visa prove two things: (1) Burk failed to use reasonable care and diligence in seeking work, and (2) jobs were available that she could have discovered and for which she was qualified. *Sparks*, 460 F.2d at 443. To establish this defense, Visa must show Burk failed to use "reasonable diligence to obtain substantially equivalent employment." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 (5th Cir. 1996) (internal quotation marks omitted) (*citing Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982)). Visa must prove "[s]ubstantially equivalent employment" existed, meaning "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position

from which [plaintiff was] discriminatorily terminated." *Id.* at 936-37 (internal quotation marks omitted) (*quoting Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990)). *Sparks* requires proof of "substantially equivalent jobs available to Plaintiff to which she did not apply." *Sparks*, 640 F.2d at 443; *see also Teague*, Dkt. No. 57, at 12.

Visa cannot prove the first element. An employer fails to carry its burden on reasonable diligence where the plaintiff contacted employment websites, sent out resumés, interviewed with employers, and registered with staffing services. *Miles-Hickman*, 613 F. Supp. 2d at 887-88; *see also Dibler v. Metwest, Inc.*, No. 3:95-CV-1046-BC, 1997 WL 222910, at *2-3 (N.D. Tex. Apr. 29, 1997) (finding diligence where plaintiff networked, sent resumes, and answered want ads). Burk began looking for work within days of the discharge and has kept a job-tracking record throughout. Ex. 5 at 86:18-23; Ex. 11, Plaintiff's Job Search Spreadsheet. Burk testified she spent her mornings "getting on the computer and looking for jobs, updating my resume, tailoring my resume, applying to different jobs, networking with individuals," and she left substitute teaching because she "needed the time to look for a job." Ex. 5 at 91:13-17, 91:22-23.

Visa cannot prove the second element. Visa questioned Burk about her work since April 23, 2024. Ex. 5 at 86:18-92:5. Visa identified no offer Burk turned down and no open position affording virtually identical compensation, responsibilities, working conditions, promotional opportunities, and status that she could have discovered and did not pursue. Burk remains unemployed and is still looking for work. Ex. 5 at 92:2-5.

Because Visa has no evidence on any element of this defense, the Court should grant summary judgment on it.

**2. Visa Cannot Show Good Faith Compliance.**

Visa asserts good faith in six defenses. Ex. 9, Affirmative Defenses Nos. 6, 9, 13, 18, 21, and 22. None of the three statutes makes good faith a defense to liability. Under the FMLA, Visa

must prove good faith and reasonable grounds for believing its conduct lawful before the Court may reduce liquidated damages, a decision the statute commits to the Court. 29 U.S.C. § 2617(a)(1)(A)(iii). To carry that burden Visa must show it took affirmative steps to learn enough law to follow it and be able to investigate rather than resting on ignorance. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468-69 (5th Cir. 1979) (FLSA good faith "requires some duty to investigate potential liability"). Courts interpreting the FMLA's good faith provision look to the analogous provision of the Fair Labor Standards Act. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999). Under the ADA, good faith bears on punitive damages and turns on the employer's efforts to implement and enforce antidiscrimination policies. *See Kolstad*, 527 U.S. at 545-46. Visa identifies Stockwell as Visa's primary decisionmaker and offers no proof his actions were antithetical to Visa's efforts to comply with federal law. Ex. 4, Response No. 1.

On the contrary: Visa has ***no evidence of good faith*** under the FMLA. When Stockwell was asked what FMLA-compliance training he received, Stockwell answered, "We do not receive any training for that." Ex. 1 at 32:20-22. Aslaksen also did not know who administers FMLA leave at Visa. Ex. 2 at 36:14-15. Stockwell told no one about Burk's cancer diagnosis and did not refer her to an FMLA resource. Ex. 1 at 79:17-19, 82:24-83:4.

The Court should grant summary judgment on Affirmative Defenses Nos. 6, 13, 18, 21, and 22 to the extent they assert good faith as a defense to liability. Any FMLA good-faith showing is for the Court after a verdict, and Visa has offered no evidence for it.

**B. Summary Judgment is Appropriate on the Undisputed Elements of Burk's Claims.**

Rule 56 permits partial summary judgment on discrete issues. *See* FED. R. CIV. P. 56(a), (g). Visa's Answer and its verified interrogatory answers concede several elements, and Visa's witnesses confirm them. The record establishes others without contradiction. Burk asks the Court

to enter an order establishing the facts and elements charted below, so the parties try only disputed facts.

**1. Employer Coverage and the Employment Relationship.**

Each of Burk's three claims reaches only a statutory "employer," and each statute defines that term by headcount: twenty or more employees for the ADEA, fifteen or more for the ADA, and fifty or more for the FMLA, in each case for each working day in twenty or more weeks of the current or preceding calendar year. 29 U.S.C. § 630(b); 42 U.S.C. § 12111(5)(A); 29 U.S.C. § 2611(4)(A)(i).

| Established Fact or Element | Undisputed Support |
|---|---|
| Visa employed Burk from November 2021 until April 23, 2024, as a Senior Director of Talent Acquisition Technology. | Ex. 9 ¶¶ 6, 23, 38; Ex. 1 at 35:5-7, 39:16-19, 127:5-7. |
| Visa employs more than 15,000 people, and is therefore an "employer" under the ADEA, the ADA, and the FMLA. | Ex. 1 at 33:19-34:4 ("It employs over 15,000."); 29 U.S.C. § 630(b); 42 U.S.C. § 12111(5)(A); 29 U.S.C. § 2611(4)(A)(i). |
| Visa employed Burk in this judicial district and does business here. | Ex. 9 ¶ 4; Ex. 5 at 28:10-14. |
| Ryan Stockwell, Visa's Vice President and Head of Global Tech Talent Acquisition, was the primary decisionmaker in the reorganization that ended Burk's employment. | Ex. 4, Response No. 1; Ex. 1 at 126:22-23, 128:14-16. |
| Burk reported directly to Stockwell. | Ex. 9 ¶ 11; Ex. 2 at 12:11-14. |

**2. Elements of the ADEA Claim.**

To make a prima facie case of age discrimination under the ADEA, a plaintiff must show:

> "(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age."

*Dabbasi v. Motiva Enters., L.L.C.*, 107 F.4th 500, 505 (5th Cir. 2024) (quoting *Jackson v. Cal-W.*

*Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)). The protected class is employees at least forty years of age. 29 U.S.C. § 631(a). Visa concedes the first three elements. The chart below sets Visa's concessions and the undisputed facts bearing on the fourth element.

| **Established Fact or Element** | **Undisputed Support** |
|---|---|
| Burk was at least 40 years old. | Visa admits Burk is over 40 and was born on December 3, 1960. Ex. 9 ¶¶ 9, 36. |
| Burk was qualified for her position. | "Defendant admits that Plaintiff was qualified for her position." Ex. 9 ¶ 37. |
| Visa took an adverse employment action against Burk. | Visa admits that on or about April 23, 2024, it advised Burk it was eliminating her position and ending her employment, and that it discharged her. Ex. 9 ¶¶ 23, 38. |
| Visa did not discharge Burk for poor performance. | "Defendant admits that Plaintiff's discharge was based on a reorganization, not because of her performance." Ex. 9 ¶ 26. "Q. Was Ms. Burk terminated for poor performance? A. No." Ex. 1 at 44:10-11; *see also id.* at 63:5-10 (agreeing the layoff was "performance neutral"). |
| Burk was 63 and Gen Harrison-Doss was 41 in April 2024, a difference of twenty-two years; Harrison-Doss moved from Director to Senior Director, the level Burk held. | Ex. 9 ¶ 9; Ex. 4, Response No. 5; Ex. 1 at 71:14-19, 188:22-189:6. |

Burk does not ask the Court to decide whether the consolidation of her duties into Harrison-Doss's role made Harrison-Doss her replacement, or whether age was the but-for cause of her discharge.

### 3. Elements of the ADA Claim.

To make a prima facie case of disability discrimination under the ADA, a plaintiff must show "(1) [she] has a disability or was regarded as disabled, (2) [she] was qualified for the job, and (3) [she] was subject to an adverse employment decision on account of [her] disability." *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 & n.4 (5th Cir. 2017)); *see also Brenyah*, 181 F.4th at 622. The record

establishes the first element as a matter of law. Visa also admits she was qualified for her position.

The ADA defines disability to include "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). A major life activity "includes the operation of a major bodily function, including but not limited to, functions of the immune system, ***normal cell growth***, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B) (emphasis added). Congress directed that the definition "be construed in favor of broad coverage." *Id.* § 12102(4)(A). The implementing regulation states that "substantially limits" "is not meant to be a demanding standard" and applying it to a given impairment "should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(i), (iii). The regulation then names cancer: "it should easily be concluded that . . . cancer substantially limits normal cell growth." *Id.* § 1630.2(j)(3)(iii).

Burk learned on February 21, 2024 she had skin cancer in three areas, and she underwent outpatient surgery at multiple sites. Ex. 13, Declaration of Catherine Burk ¶¶ 27-31, 39, 42, 44-46; Exs. 15-17; Ex. 1 at 80:22-81:21, 83:17-84:7; Ex. 5 at 69:10-71:3. Pathology reports Visa obtained from her dermatologist show squamous cell carcinoma on her forehead and recurrent basal cell carcinoma on her upper back. Ex. 5 at 57:17-58:7, 63:21-65:6. Burk is thus a person with a disability under 42 U.S.C. § 12102(1)(A), and summary judgment is proper on the first element. The following chart sets out the undisputed points.

| Established Fact or Element | Undisputed Support |
|---|---|
| Burk had cancer, an impairment that substantially limits the major life activity of normal cell growth. She is a person with a disability under the ADA. | Ex. 13 ¶¶ 27-31; Ex. 5 at 63:21-65:6; Ex. 1 at 80:22-81:21, 83:17-84:7, 183:17-19; 42 U.S.C. § 12102(1)(A), (2)(B); 29 C.F.R. § 1630.2(j)(3)(iii). |
| Burk was qualified for her position and performed its essential functions. | "Defendant admits that Plaintiff was qualified for her position." Ex. 9 ¶ 37. Visa rated her "outstanding" on the What for fiscal year 2023. Ex. 14; Ex. 1 at 63:14- |

| | |
|---|---|
| | 20; Ex. 2 at 67:9-17. |
| Visa knew of Burk's cancer diagnosis and her medical procedures before it discharged her. | Ex. 9 ¶¶ 14, 25, 47; Ex. 4, Response No. 7; Exs. 15-16; Ex. 1 at 20:14-20, 81:11-21, 84:8-11, 85:9-12. |
| Visa took an adverse employment action against Burk. | Ex. 9 ¶¶ 23, 38. |

**4. Elements of the FMLA Claim.**

To make a prima facie case of FMLA interference, a plaintiff must show "(1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [s]he was entitled under the FMLA." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021) (quoting *Caldwell*, 850 F.3d at 245). The employee must also show the violation prejudiced her. *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017). A claim for interference merely requires proof the employer denied the employee her entitlements under FMLA. *Id.*

An eligible employee has worked at least twelve months and 1,250 hours in the previous twelve months, at a worksite where the employer employs at least fifty employees within seventy-five miles. 29 U.S.C. § 2611(2)(A), (B)(ii). An employee is entitled to leave for a serious health condition that makes her unable to perform the functions of her position, and a serious health condition includes an illness or impairment involving inpatient care or continuing treatment by a health care provider. *Id.* §§ 2612(a)(1)(D), 2611(11). Continuing treatment includes absences for multiple treatments for a condition that would otherwise likely cause incapacity for more than three consecutive, full calendar days, and the regulation names cancer among its examples. 29 C.F.R. § 825.115(e)(2). An employee's notice need not mention the FMLA by name. *Martinez*, 819 F. Supp. 3d at 638. The chart below sets out the first four elements.

| Established Fact or Element | Undisputed Support |
|---|---|
| Burk worked for Visa for more than twelve months before April 23, 2024. She also worked at least 1,250 hours in that period, at a worksite where Visa employed fifty or more people within seventy-five miles. | "Defendant admits that Plaintiff had worked for Defendant for the requisite period of one year." Ex. 9 ¶ 56; *see also Ex. 9 ¶ 6;* Ex. 13 ¶¶ 7-8, 10-23; Ex. 5 at 28:10-14, 45:24-46:3; Ex. 1 at 33:19-34:4; 29 U.S.C. § 2611(2). |
| Visa is a covered employer under the FMLA. | Ex. 1 at 33:19-34:4; 29 U.S.C. § 2611(4)(A)(i). |
| Burk had a serious health condition. She was diagnosed with skin cancer in three areas and underwent outpatient surgery at multiple sites under a physician's care. | Ex. 13 ¶¶ 25-31, 34, 39, 42-46; Ex. 5 at 63:21-65:6, 69:10-71:3, 72:16-24; Ex. 17; Ex. 1 at 83:17-84:7; 29 U.S.C. § 2611(11); 29 C.F.R. § 825.115(e)(2). |
| Burk notified Stockwell that she needed time off for surgeries in March 2024. | Ex. 9 ¶ 15; Ex. 17; Ex. 4, Response No. 8; Ex. 1 at 79:20-22, 83:17-84:7. |

Visa interfered with Burk's FMLA rights. The statute makes it unlawful to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an FMLA right. 29 U.S.C. § 2615(a)(1). Interference is treated as a strict-liability claim; its elements do not include the employer's intent. *See Acker*, 853 F.3d at 788; 29 U.S.C. § 2615(a)(1); *see also Goelzer v. Sheboygan County, Wisc.,* 604 F.3d 987, 995 (7th Cir. 2010) ("The difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee his or her entitlements under the Act.' "), quoting *Kauffman v. Fed. Express Corp.,* 426 F.3d 880, 884 (7th Cir. 2005). Judge Elrod clarified this in *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 (5th Cir. 2013) (Elrod, C.J., concurrence) (collecting cases) ("[c]laims that arise from the deprivation of an FMLA entitlement do not require a showing of discriminatory intent . . . .").

Visa discharged Burk on April 23 while she still had stitches from her latest surgery; each surgery limited her for two to three weeks, and she returned to her physician for follow-up care

after the discharge. Ex. 5 at 79:23-80:3, 81:4-15. The discharge ended her right to take protected leave for that recovery and care and return to her position, and that loss prejudiced her. Ex. 13 ¶¶ 58-64; *see Campos*, 10 F.4th at 527 (prejudice is case-specific). No genuine dispute exists as to any element.

To avoid liability, Visa pleads it would have taken the same action regardless of Burk's FMLA leave. Ex. 9, Affirmative Defense No. 8. Visa bears the burden of persuasion on that defense by a preponderance of the evidence: an employer "would have the burden of proving that an employee would have been laid off during the FMLA leave period." 29 C.F.R. § 825.216(a)(1); *see Segura v. TLC Learning Ctr.*, No. 1:12-cv-07020, 2015 WL 93910, at *4-6 (N.D. Ill. Jan. 6, 2015) (granting plaintiff summary judgment on FMLA liability despite proffered defense). Visa attributes Burk's discharge to a reorganization, Ex. 4, Response Nos. 1-2. Visa maintains the evidentiary burden on summary judgment to prove Burk would have lost her position even if she had not taken FMLA leave. *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 307 (5th Cir. 2021). It cannot do so.

Burk emailed Stockwell on February 22, 2024, informing him of her cancer. Ex. 1 at 81:11-21, 123:18-21. On February 23, 2024 (the next day), Bell, who aided the reorganization, wrote, "For Catherine, I know we will down-level to Director . . . ," meaning Burk's position would drop a level. *Id.* at 110:13-111:5; Ex. 3 at 43:13-23. Stockwell agreed this message said nothing about combining Burk's role with Harrison-Doss's or firing Burk. Ex. 1 at 120:2-8. On February 29, Bell asked Stockwell to explain in his draft business case why Burk's scope was moving to Harrison-Doss. Ex. 3 at 35:8-37:24, 39:14-17. After he revised it, she wrote, "Per the conversation with Hilary, we were going to down-level Catherine's role to Director. If that's the case, the rationale should be that . . . ." *Id.* at 41:6-42:2. Bell testified she gave that feedback ***after*** the decision to

down-level Burk's role. *Id.* at 46:18-47:17. Then, on March 5, Bell summarized the two options she and Stockwell were weighing: create a new Senior Director role for which Burk and Harrison-Doss would interview, or eliminate one Senior Director role and exit Burk. Ex. 1 at 120:16-121:16. On March 6, they told Aslaksen they chose elimination. *Id.* at 123:6-15. However, Stockwell testified Visa had decided to terminate Burk ***before*** Bell's February 23 message, *id.* at 118:22-25, but said he believed "the final decision was not made" while those options were open, *id.* at 121:17-122:4, and he agreed no part of this sequence was incorrect, *id.* at 124:18-125:2.

Stockwell did not receive a headcount reduction target and he made the recommendation. Ex. 1 at 103:10-12. Visa used a selection matrix for roles below Director, but "[Visa] didn't use that -- any type of matrix for Catherine [Burk] or Gen [Harrison-Doss]." *Id.* at 119:10-19. The business case credited Harrison-Doss's "stronger performance/capability in the 'how,'" *id.* at 135:8-16, though Burk's layoff was "performance neutral." *See* Section II. Visa gave Burk's duties to Harrison-Doss, who was not on FMLA leave, and Harrison-Doss now mostly does Burk's job. Ex. 4, Response No. 5; Ex. 1 at 171:6-11. Visa has no evidence or objective criteria indicating Burk would have been discharged regardless of her leave. *Cf. Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 527-28 (5th Cir. 2022) (inconsistent explanations and "the absence of clear criteria" for a reduction in force were evidence of pretext). Burk asks the Court to enter judgment that Visa interfered with her FMLA rights or, alternatively, to grant the relief requested in Section V.

## V. <u>CONCLUSION AND PRAYER</u>

Visa pled twenty-five defenses. Most are denials, not defenses, and Visa lacks evidence for the few that are. Burk respectfully asks the Court to grant this motion, enter judgment for Burk on Affirmative Defense Nos. 1 through 25 or, alternatively, order that Nos. 1, 3, 4, 12, and 15 not be submitted to the jury as affirmative defenses, enter judgment that Visa interfered with Burk's rights under the FMLA or, alternatively, hold that Visa bears the burden of proving its same-decision

defense to the FMLA claim, enter an order under Rule 56(a) and (g) establishing the facts and elements set out in Section IV.B, and grant all other proper relief.

Respectfully submitted,

**KAPLAN LAW FIRM, PLLC**
2901 Bee Cave Rd, Suite G
Austin, Texas 78746
P: (512) 814-5822 | F: (512) 692-2788

*/s/ Gabriel Loya*
Trenton Lacy
Texas Bar No. 24106176
tlacy@kaplanlawatx.com
Gabriel Loya
Texas Bar No. 24141905
gloya@kaplanlawatx.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that I served a complete and correct copy of this motion under the Federal Rules of Civil Procedure on the following parties of record on Tuesday, October 13, 2026.

***Via e-service:***
Heather F. Crow
hfc@kullmanlaw.com
Samuel Zurik III
sz@kullmanlaw.com
THE KULLMAN FIRM, PLC
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
T: (504) 524-4162
F: (504) 596-4114

**ATTORNEYS FOR DEFENDANT**

*/s/ Gabriel Loya*
Gabriel Loya